# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| ANGELA SMITH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:17 CV 2329 DDN |
| ) | |
| NANCY A. BERRYHILL, ) | |
| Deputy Commissioner of Operations, ) | |
| Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

## **MEMORANDUM**

This action is before the court for judicial review of the final decision of the defendant Commissioner of Social Security finding that plaintiff Angela Smith was not disabled and thus not entitled to supplemental security income ("SSI") benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. The parties have consented to the exercise of plenary authority by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons set forth below, the decision of the Administrative Law Judge ("ALJ") is affirmed.

## I.  **BACKGROUND**

Plaintiff Angela Smith, born on September 12, 1978, filed an application for SSI on March 4, 2014, alleging a disability onset date of April 12, 1999, due to back pain, bipolar disorder, depression, anxiety, and muscle spasms. (Tr. 117, 138.) She later amended the onset date to April 15, 2013. (Tr. 133.) Plaintiff's application was denied at the initial administrative level, and she filed a request for a hearing. (Tr. 57-60, 65-67.) An evidentiary hearing was held on January 28, 2016, before an ALJ. (Tr. 33-45.) The ALJ issued a decision on May 27, 2016, finding no disability, because plaintiff could perform jobs that exist in significant numbers in the national economy. (Tr. 16-32.) Plaintiff requested a review of the ALJ decision by the Appeals Council, which was denied, thus exhausting all administrative remedies. (Tr. 1-5, 116.) The ALJ's decision stands as the final decision of the Commissioner.

Plaintiff argues that the ALJ's decision was not supported by substantial evidence in the record. Specifically, she argues that the ALJ failed to include a relevant limitation from a medical opinion in the residual functional capacity ("RFC") assessment after (1) giving that opinion great weight and (2) not providing an explanation for why the limitation was disregarded. (Doc. 13 at 2.) This omission, plaintiff argues, prevents the RFC from being supported by substantial evidence. Additionally, plaintiff argues the intensity, persistence, and limiting effects of her symptoms were not properly evaluated, and thus the ALJ improperly concluded that her subjective symptoms were inconsistent with the record. (*Id.* at 7.) Plaintiff asks that the ALJ's decision be reversed or that the case be remanded for a new administrative hearing.

**A.** **Medical Record and Evidentiary Hearing**

The court adopts plaintiff's Statement of Material Facts (Doc. 13, Ex. 1) as clarified by defendant's response (Doc. 18, Ex. 1) in addition to defendant's Statement of Additional Facts (Doc. 18, Ex. 2) as admitted in plaintiff's response (Doc. 19, Ex. 1). Together, these facts represent a fair and accurate summary of the medical record and testimony as given at the evidentiary hearing on January 28, 2016. The court will discuss relevant facts as necessary to address the parties' arguments.

**B.** **ALJ's Decision**

On June 2, 2016, the ALJ issued a decision that plaintiff was not disabled under section 1614(a)(3)(A) of the Social Security Act. The ALJ found that plaintiff had not engaged in substantial gainful activity since the application date,[1] March 4, 2014, and had the severe impairments of a mood disorder and a depressive disorder, moderate, recurrent. Furthermore, the ALJ found that none of these impairments, individually or in combination, met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1, because neither the "paragraph A," "paragraph B," nor "paragraph C" criteria were met for Listing 12.04 (affective mood disorders). In stating the "paragraph B" findings, the ALJ noted that plaintiff

---

[1] Although plaintiff claimed an onset date of April 15, 2013, and although the ALJ considered plaintiff's complete medical history, the ALJ referred to plaintiff's March 4, 2014 application date rather than the alleged onset date, citing 20 C.F.R. § 416.335.

only had mild restrictions of activities of daily living and mild difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence or pace; and no repeated episodes of decompensation. Though not severe enough to establish a listed impairment, the ALJ considered these restrictions in determining the RFC. (Tr. 21-23.)

The ALJ found plaintiff:

has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant would be limited to simple, routine, repetitive tasks, in a work environment free of fast paced production requirements, involving only simple work related decisions, with few if any work-place changes.

(Tr. 23.) In making this determination, the ALJ considered the various medical opinions, noting the limitations and restrictions physicians reported about plaintiff's abilities. (Tr. 22-27.) In addition, he analyzed her reported symptoms, considering her subjective history of complaints in conjunction with the medical evidence. The ALJ found plaintiff's subjective statements on the intensity, persistence and limiting effects of the symptoms were not entirely consistent with the medical evidence, and the record as a whole provided substantial evidence for this RFC. *Id.*

Continuing the analysis, the ALJ noted plaintiff has no past relevant work to which she could return. However, after considering the interrogatory responses of the vocational expert, the ALJ found that a person with the plaintiff's age, education, work experience, and RFC could perform jobs such as dining room attendant, housekeeper, and cafeteria attendant, which exist in the national economy in significant numbers. Accordingly, the ALJ concluded that plaintiff was not disabled and had not been under a disability since March 4, 2014, the date the application was filed. (Tr. 28.)

## II.   DISCUSSION

### A.   Standard of Review and Legal Framework

To qualify for disability benefits, the claimant must prove an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Social Security Administration has created a five-step sequential evaluation process to determine an individual's disability status. If a finding of disability or no disability can be

found at any step, the analysis is finished and does not proceed to the next step. 20 C.F.R. §416.920. At Step One, the claimant must prove she is not engaged in substantial gainful activity as defined by work activity done for pay or profit involving significant physical or mental activities. 20 C.F.R. §§ 416.920(a)(4)(i), 416.927(a)-(b). At Step Two, the claimant must show she suffers from a severe impairment or a combination of impairments that is severe and meets the twelve month duration requirement. 20 C.F.R. §§ 416.920(a)(4)(ii), 416.909. At Step Three, the claimant may prove her disability meets or medically equals a listed impairment in 20 CFR Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 416.920(a)(4)(ii). Establishing a listed impairment will prove disability, but a failure to do so does not defeat the claim. Between the third and fourth step, the ALJ determines the RFC, which represents the most the claimant can do despite her limitations. 20 C.F.R. § 416.945; SSR 96-8P, 1996 WL 374184, at *1 (July 2, 1996). The RFC should be based on all relevant medical evidence in the record. 20 C.F.R § 416.920(e). At the fourth Step, the claimant must prove she cannot do her past relevant work. 20 C.F.R § 416.920(f). At the fifth Step, the ALJ determines whether the claimant can perform other work. The claimant must continue to prove disability, but the Social Security Administration has the burden of providing evidence of jobs existing in significant numbers in the national economy that the claimant can perform considering her RFC, age, education, and work experience. 20 C.F.R. § 416.960(c)(2). If the claimant can perform other work, the ALJ will find no disability.

In reviewing the denial of Social Security disability benefits, the Court "must review the entire administrative record to determine whether the ALJ's findings are supported by substantial evidence on the record as a whole." *Johnson v. Astrue*, 628 F.3d 991, 992 (8th Cir. 2011). Substantial evidence is "less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009).

To determine whether there is substantial evidence, the court must consider evidence that both supports and detracts from the ALJ's conclusion. *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012). However, the Court is not to reverse the ALJ's decision as long as it falls within the "available zone of choice." *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008). The decision is not outside the zone of choice solely because the court may have reached a different conclusion had it been the finder of fact. *Id.* Additionally, substantial evidence may exist to

support two inconsistent decisions. As long as one of those positions represents the Commissioner's decision, the Court must affirm. *See, e.g., Mapes v. Chater*, 82 F.3d 259, 262 (8th Cir. 1996).

**B.      The RFC is properly supported by substantial evidence in the record**

Plaintiff first argues that the ALJ's assessment of the RFC is not supported by substantial evidence, because it does not account for the opinion of Thomas Spencer, Psy.D., that plaintiff has a marked limitation in responding appropriately to usual work situations and to changes in a routine work setting. Dr. Spencer performed a psychological evaluation of plaintiff as a consulting physician, and the ALJ gave his opinion "great weight" because of his expertise with mental health issues and familiarity with the Social Security disability program. Plaintiff claims it was in error for the ALJ to give the opinion such weight and not either explicitly mention the limitation at issue in the RFC or provide a reason for discounting it. (Tr. 26.) Here, the Court concludes that the RFC is nevertheless supported by substantial evidence.

Substantial evidence is proven by looking at the record as a whole, including all relevant evidence of medical records, physician observations, and the claimant's subjective descriptions. *Pearsall v. Masanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). The ALJ must look at all of the evidence when making an RFC assessment, not just Dr. Spencer's opinion. SSR 96-8P, 1996 WL 374184, at *1 (July 2, 1996). "The opinion of a consulting physician who examines a claimant once or not at all does not generally constitute substantial evidence" on its own. *Kelley v. Callahan*, 133 F.3d 583, 589 (8th Cir. 1998). The final conclusion then does not have to "mirror any particular doctor's opinion," but can represent an amalgamation of several medical opinions and the plaintiff's statements. *Dow v. Colvin*, 174 F.Supp.3d 1074, 1079 (E.D. Mo. 2016). The RFC overall is only required to "include those impairments which are substantially supported by the record as a whole." *Goose v. Apfel*, 238 F.3d 981, 985 (8th Cir. 2001).

Here, there is a general division between plaintiff's subjective statements and medical source assessments. Plaintiff complains of anxiety, lack of sleep, lack of motivation, depressed mood "every day of her life," not being able to handle being in the presence of other people because of panic attacks, and lying in bed crying. (Tr. 39, 43, 218-219, 227, 230.) In his disability determination explanation, Alan Aram, Psy.D., found discrepancies between the evidence and plaintiff's subjective complaints, finding her to be only partially credible. (Tr. 53.)

Additionally, plaintiff's subjective complaints increased dramatically upon consultative examination with Dr. Spencer, who found depression, a recent onset of self-mutilation, and recurrent thoughts of suicide when previous physicians found she did not have such ideations and reported symptoms more consistent with bipolar disorder. (Tr. 217-19, 226, 231, 236-37.)

Some of plaintiff's subjective statements and the majority of the physician's assessments are consistent with substantial evidence finding no disability. Plaintiff notes that she cleans, watches television, can prepare frozen meals, does dishes and laundry, and needs no reminders for medication or personal care. (Tr. 151-55, 39, 41-42, 160.) While her household activities in isolation are insufficient by themselves to find no disability or discredit her subjective statements, when considered with the rest of the evidence, they are supportive of such a finding. *Milam v. Colvin*, 794 F.3d 978, 985 (8th Cir. 2015).

To that end, on September 8, 2014, plaintiff reported that her Cymbalta medication was "working well." (Tr. 233.) Taking both Cymbalta and Xanax, her anxiety is "tolerable," and her mood is "okay." *Id.* Treatment seems to improve her condition and even out her temperament. (Tr. 237.) She has mild restrictions of activities of daily living and difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace, and no repeated episodes of decompensation. (Tr. 51.)

Dr. Aram gave the opinion that plaintiff's abilities to perform the following tasks were not significantly limited: to "carry out very short and simple instructions;" "maintain attention and concentration for extended periods;" "perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances;" "sustain an ordinary routine without special supervision;" "work in coordination with or in proximity to others without being distracted by them;" and "make simple work-related decisions." (Tr. 52-53.) These abilities, in conjunction with no social interaction or adaptation limitations, indicate substantial evidence for a finding of no disability. Additionally, these particular findings contradict Dr. Spencer's marked restriction in responding appropriately to usual workplace situations. Unlike Dr. Spencer's opinion which was stated mostly on a checkbox form, Dr. Aram's opinion gave an additional narrative explanation for his limitation selections, citing plaintiff's progression through mental status exams over time, with the most recent exam finding logical and goal-directed thought processes, intact memory and judgment, and fair insight. (Tr. 53.)

There is sufficient evidence in the record to find that the RFC and resulting determination that plaintiff is not disabled are supported by substantial evidence. She improves with treatment and is able to perform simple instructions, make simple decisions, and carry out basic personal care tasks. While there is some evidence that would support the opposite finding, if substantial evidence exists to affirm the ALJ's opinion, the Court must do so. *Mapes*, 82 F.3d at 262.

When determining the RFC, the ALJ must look at the whole record. If the RFC conflicts with a medical source opinion, the ALJ must either account for all such evidence in the RFC or give reasons for discounting it. SSR 96-8P, 1996 WL 374184, at *7 (July 2, 1996). Plaintiff argues that the marked difficulty in responding to usual workplace situations conflicts with the RFC and thus is not supported by substantial evidence. However, the limitation does not conflict with the RFC, because the limitation itself is inconsistent with substantial evidence in the record. Accordingly, the ALJ lawfully limited the RFC to limitations found to be credible in light of the entire record. *McGeorge v. Barnhart*, 321 F.3d 766, 769 (8th Cir. 2003).

Dr. Spencer's limitation was presented on the checkbox Medical Source Statement form. (Tr. 241.) Such checkmarks on a form "are conclusory opinions that may be discounted if contradicted by other objective medical evidence in the record." *Martise v. Astrue*, 641 F.3d 909, 926 (8th Cir. 2011). The checked box has little evidentiary value when it "stands alone," cites "no medical evidence, and provides little to no elaboration." *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir.2001); *see also Wildman v. Astrue,* 596 F.3d 959, 964 (8th Cir. 2010). The form asks the physician to identify the factors that support the assessment. Dr. Spencer noted the set of workplace restrictions as being supported by "mood disorder not otherwise specified and borderline personality traits." (Tr. 241.) This statement is not supported by medical evidence and does not justify Dr. Spencer's decision on the level of restriction.

The rest of the consulting psychological evaluation does not support this marked limitation. Dr. Spencer assigned plaintiff a Global Assessment of Functioning ("GAF") score of 55-60 (Tr. 238), which the ALJ stated indicates "moderate difficulties in social, occupational, and educational functioning. (Tr. 25). This measure is inconsistent with a marked impairment for usual situations. (Tr. 237-38).

Additionally, the basis upon which plaintiff relies for arguing that the RFC conflicts with the limitation is incorrect. Plaintiff cites SSR 85-15, which states the ability to respond to usual work situations is a "basic mental demand[] of competitive remunerative, unskilled work." 1985

WL 56957, at *4 (1985). According to Dr. Spencer's form, a marked limitation means a "substantial loss in the ability to effectively function." (Tr. 240.) And a substantial loss in the ability to meet a basic mental demand of such work would "justify a finding of disability." SSR 85-15, 1985 WL 56957, at *4 (1985). This Ruling does not state that the marked limitation would require a finding of disability. The ALJ may look at the evidence as a whole, including the physician's medical opinion and the rest of the record, to make the final conclusion.

In general, the RFC assessment must "consider and address medical source opinions" for both treating and consulting physicians. SSR 96-8P, 1996 WL 374184, at *7 (July 2, 1996). Dr. Spencer in this case is a consulting physician. If the RFC does not conflict with the evidence, the ALJ does not have "to provide reasons for failing to adopt limitations from consulting physicians, as an ALJ would have to do if it were a treating physician's opinion." *Hilderbrand v. Berryhill*, No. 4:16-CV-405 (CEJ), 2017 U.S. Dist. LEXIS 92910, 2017 WL 2618269, at *23 (E.D. Mo. June 16, 2017). This is because treating physicians' opinions may have controlling weight if well supported by medical evidence and not inconsistent with substantial evidence, while consulting physicians do not get controlling weight. *Prosch v. Astrue*, 201 F.3d 1010, 1012-13 (8th Cir. 2012).

With consulting physician opinions, the ALJ cannot disregard evidence or ignore potential limitations, but "we do not require an ALJ to mechanically list and reject every possible limitation." *McCoy v. Astrue*, 648 F.3d 605, 615 (8th Cir. 2011); *See* SSR 96-5P, 1996 WL 374183, at *3 (July 2, 1996). Here, the ALJ did not disregard or ignore potential limitations. Although he did not specifically address one half of the limitation, he added the "changes in a routine work setting" factor to the RFC. (Tr. 23.) Doing so indicates a consideration and rejection of the other part of the limitation even though not stated plainly. Though he did not fully discuss the limitation in disregarding it, he recorded it in the course of the RFC assessment when he listed Dr. Spencer's restriction assessments from the Medical Source Statement Form. (Tr. 25-26.) He included that piece of the assessment, acknowledging Dr. Spencer's opinion, but was not required to explicitly discount every limitation, thus fulfilling his analytical duties in creating the RFC. The ALJ has to consider all of the evidence, but "an ALJ is not required to discuss every piece of evidence submitted." *Wildman,* 596 F.3d at 966. Furthermore, failing to cite a specific piece of evidence "does not indicate that such evidence was not considered." *Id.*

(quoting *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998)). The mention of this limitation in the ALJ's assessment suffices.

To determine whether or not the limitations were overlooked, the depth or thoroughness of the ALJ's RFC assessment can indicate that the ALJ considered all of the evidence, even if not done so explicitly. *See Hilderbrand v. Berryhill*, 2017 WL 2618269, at *23. Here, the findings of fact and conclusions of law section of the ALJ opinion is almost seven pages long. (Tr. 21-27.) The ALJ explicitly mentions that "the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence[.] . . . The undersigned has also considered opinion evidence" in accordance with the proper regulations. (Tr. 23.) The length of the opinion and the extent to which he discusses the various medical opinions demonstrates that he did not disregard evidence or ignore potential limitations.

Instead, he implicitly rejected the limitation because it was not consistent with the record as a whole. The functions mentioned in the RFC are those the ALJ found credible and supported by the record. Those not included, then, are not supported by the weight of the evidence. Dr. Spencer noted that plaintiff has a marked restriction in the ability to respond appropriately to usual work situations and to changes in a routine work setting. It is not disputed that the second half, changes in a routine work setting, has been accounted for in the RFC. The ALJ's inclusion of part of the limitation at issue suggests the ALJ did not overlook the rejected limitation, but reviewed the record and implicitly found that limitation unsupported. There is no reason to remand to make that finding explicit. *Depover v. Barnhart*, 349 F.3d 563, 567–68 (8th Cir. 2003).[2]

---

[2] In each of the cases plaintiff cites in which the limitation was not included nor reasons given for its exclusion and led to remand, there were other substantial problems which led the reviewing court to find a lack of substantial evidence. In those cases, the failure to include the limitation in the RFC or explain its absence was indicative of a larger pattern of that ALJ's tendency to ignore large amounts of evidence thus not supporting the RFC with substantial evidence on all of the record. *See Gann v. Berryhill*, 864 F.3d 947, 952 (8th Cir. 2017) (remanding when two physicians noted adaptive limitations, but the ALJ did not include such limitations either in the RFC or in the vocational expert hypothetical thus excluding the limitation entirely from his analysis); *McCadney v. Astrue* 519 F.3d 764, 767 (8th Cir. 2008) (remanding when it was unclear what, if any, weight was given to a physician's opinion, if it was discounted, and if so, why after several diagnoses and mental restrictions were not included in the RFC assessment but had been indicated in the record); *Murphy v. Colvin*, No. 1:15-CV-

## C. The ALJ properly evaluated the intensity, persistence, and limiting effects of plaintiff's symptoms

Second, plaintiff argues that the ALJ failed to properly evaluate whether the intensity, persistence, and limiting effects of plaintiff's symptoms were consistent with the rest of the record. Plaintiff lists three areas in which the propriety of the evaluation is under question: her treatment history, including reasons she did not receive treatment and her lack of emergency treatment or psychiatric hospitalization; the effectiveness of her medications; and physician comments, or lack thereof, concerning her ability to work. The Court concludes that the ALJ's finding plaintiff's symptoms not entirely consistent with the medical evidence and other evidence in the record was lawful and should be affirmed.

In evaluating the intensity, persistence, and limiting effects of plaintiff's symptoms, the ALJ is to examine the entire record, including objective medical evidence, subjective patient statements, and any other relevant evidence in the record. SSR 16-3P, 2017 WL 5180304, at *4 (Oct. 25, 2017). One aspect of the evaluation is whether an individual's subjective statements are consistent with the medical evidence. Just because statements of symptoms are inconsistent with the medical evidence does not cause the statements to be disregarded, but the ALJ may "discredit [complaints] if they are 'inconsistent with the evidence as a whole.'" *Turpin v. Colvin*, 750 F.3d 989, 993 (8th Cir. 2014) (citing *Clark v. Chater,* 75 F.3d 414, 417 (8th Cir.1996)); *see also* SSR 16-3P, 2017 WL 5180304, at *5 (Oct. 25, 2017). If the subjective statements are inconsistent with the other evidence, the symptoms "are less likely to reduce [the plaintiff's] capacities to perform work-related activities or abilities to function independently, appropriately, and effectively in an age-appropriate manner." SSR 16-3P, 2017 WL 5180304, at *8 (Oct. 25, 2017).

Furthermore, in addition to the various forms of relevant evidence, the ALJ uses several factors to evaluate an individual's symptoms. The relevant factors at issue include:

---

00131-AGF, 2016 WL 4158868, at *7 (E.D. Mo. Aug. 5, 2016) (remanding when the ALJ assigned great weight to the physician opinion, found it was well-supported by the record, and failed to give a reason for rejecting the opinion); *Reynolds v. Astrue*, No. 1:06 CV 64 CDP DDN, 2007 WL 5100461, at *4 (E.D. Mo. Aug. 7, 2007) (remanding when the ALJ did not include several of the plaintiff's nonexertional mental limitations that were supported by substantial evidence and failed to consider a physician opinion that plaintiff was unable to work and had no indication the limitation was even considered, as it was not mentioned anywhere in the RFC analysis).

      2. The location, duration, frequency, and intensity of pain or other symptoms;

. . . .

      4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;

      5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;

. . . .

      7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

*Id.*

      Plaintiff argues the factors regarding her treatment history were inappropriately evaluated. According to SSR 16-3P, the ALJ "will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints." *Id.* at *9. Plaintiff argues the ALJ did not sufficiently look into or expand upon plaintiff's explanations of lacking transportation and difficulty maintaining insurance. However, the ALJ specifically notes plaintiff's explanations in his decision after he described the factors necessary to his determination: "The claimant reported she ran out of insurance four months ago and recently got back on Medicaid," she "missed appointments (the last five) due to a lack of transportation," and "claimant reported that she lost her health coverage maybe a year ago, but was recently seen through Comtrea." (Tr. 23-24.) His explicit acknowledgement of her explanations to various medical providers about her reasons for delaying or skipping office visits indicates his consideration of the problem. *See Hilderbrand v. Berryhill*, 2017 WL 2618269, at *23 (holding that thoroughness in the description and assessment can indicate consideration).

      Furthermore, SSR 16-3P includes many aspects about treatment history that the ALJ may consider, including "access to free or low-cost medical services" and that "an individual's symptoms may not be severe enough to prompt him or her to seek treatment." 2017 WL 5180304, at *9-10 (Oct. 25, 2017). The ALJ acknowledged plaintiff's attempts to seek out free or low-cost care, first with Medicaid in January of 2014 and then at Comtrea in March 2016, but noted generally that plaintiff "did not avail herself to health care for indigent persons until recently." (Tr. 23-24.)

Additionally, the ALJ considered how plaintiff's symptoms may not be severe enough to prompt her to seek treatment, in that she had no "emergency room visits or psychiatric hospitalization," and the evidence showed "only sporadic routine office visits, numerous missed appointments, and medication noncompliance." When asked at the evidentiary hearing, she testified that she had not sought any psychiatric treatment[3] and had not been on medications for the last couple of months. *Id.*

Plaintiff argues that she need not be bedridden or having psychiatric hospitalization in order to be disabled, which is correct. *Reed v. Barnhart*, 399 F.3d 917, 923 (8th Cir. 2005); *Cornell v. Colvin*, 2014 WL 7238006, at *6 (W.D. Mo. Dec. 17, 2014). While not needing emergency care or hospitalization does not preclude a finding of disability, continuing to seek out treatment, taking advantage of indigent care, being hospitalized, and trying various medications or doses "may be an indication that an individual's symptoms are a source of distress and may show that they are intense and persistent." SSR 16-3P, 2017 WL 5180304, at *9 (Oct. 25, 2017); *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003) ("An ALJ may discount a claimant's subjective complaints of pain based on the claimant's failure to pursue regular medical treatment."). As such, the ALJ's consideration of her hospitalization history, or lack thereof, was not improper.

The second factor plaintiff argues was incorrectly evaluated is the effectiveness of medication she has taken to alleviate her symptoms. The ALJ stated that "the record and claimant's testimony reflect that she stabilizes when receiving treatment and medications." (Tr. 27.) Plaintiff argues there is no evidence that she stabilized. On the contrary, there is strong evidence to support the general notion that medication greatly improved her symptoms to the point where she could function satisfactorily. When compliant with the treatment plan to take Cymbalta daily and Xanax twice daily, she reported Cymbalta was "working well" and her anxiety was "tolerable." (Tr. 233.) Her doctor then assessed her as having all good marks on her mental status exam. (Tr. 234.) In the "subjective" section of the progress note, there are no

---

[3] After the evidentiary hearing with the ALJ, plaintiff had her consultative examination with Dr. Spencer. (Tr. 236.) At the consultation, plaintiff reported that she was hospitalized a week prior because she had been cutting herself. However, there is no medical record to document such hospitalization in the evidence that was submitted to the ALJ, nor does it appear that such evidence was submitted to the Appeals Council.

additional complaints of her symptoms persisting to disabling levels despite the improved condition after medication. (Tr. 233.)

Plaintiff argues that even if her condition did stabilize, such a finding is not inconsistent with disabling symptoms. However, in each of the cases plaintiff cites for this principle, the patient was noted as "doing well" for their particular illness, but still cited intense, persistent symptoms. Here, when compliant with the treatment plan, plaintiff no longer cited such symptoms. *See Woods v. Astrue*, 780 F. Supp. 2d 904, 914 (E.D. Mo. 2011) (holding that a patient who is stable on medications still can be disabled when the patient has persistent inverted sleeping patterns and depressed, spontaneous crying spells); *Hutsell v. Massanari,* 259 F.3d 707, 712–13 (8th Cir. 2001) (holding that a patient "doing well" as a chronic schizophrenic can still be disabled because the doctors concluded that the patient's work skills are seriously deficient due to the remaining symptoms); *Fleshman v. Sullivan*, 933 F.2d 674, 676 (8th Cir. 1991) (holding that a patient "feel[ing] better" and "doing well" as a post-kidney transplant patient may place her in a good position as compared to others with transplants, but she can still be disabled because of her continuing intense pain and confusion).

The third area plaintiff argues was incorrectly evaluated is "any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms." SSR 16-3P, 2017 WL 5180304, at *8 (Oct. 25, 2017). The ALJ stated that "the record establishes that none of the claimant's treating physicians have ever recommended that she not seek employment." (Tr. 27.) His statement of the treating physicians not recommending that she not seek employment is an appropriate consideration. *See Bryant v. Colvin*, 861 F.3d 779, 784 (8th Cir. 2017).

Overall, the ALJ's analysis of the intensity, persistence and limiting effects of plaintiff's symptoms was lawful. In addition to the issues previously discussed, he considered medication noncompliance; inconsistencies in her reports of symptoms and history to physicians; dramatically increased symptoms with suicide attempts, self-reported hospitalization, and self-mutilation upon consultative examination for Social Security determination that were not previously noted anywhere in the record; and a physician's statement that her subjective statements were inconsistent with the evidence. The record as a whole demonstrates the ALJ's analysis was lawful.

**III.     CONCLUSION**

For the reasons set forth in this opinion, the decision of the Commissioner of Social Security is affirmed.  An appropriate Judgment Order is issued herewith.

                               /S/   David D. Noce
                         **UNITED STATES MAGISTRATE JUDGE**

September 25, 2018.